Ben Alton Sides was convicted of speeding and DUI. He was fined $250, was given a 30-day suspended sentence, and was ordered to pay $15 to the Crime Victim's Compensation Fund. He raises three issues on this appeal from those convictions.
 I
The defendant claims that the State presented insufficient evidence that he was under the influence at the time he was driving.
Trooper M.W. McHenry stopped the defendant for speeding at 9:25 p.m. In the course of obtaining information from the defendant to complete the Uniform Traffic Ticket and Complaint, McHenry noticed "a strong odor of alcoholic beverage" coming from the defendant. The trooper conducted several field sobriety tests, including the alco-sensor test, the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-standing test. McHenry stated that, based on the defendant's performance on these tests, he "felt [the defendant] was *Page 857 
too impaired to be driving," and he arrested him for speeding and DUI. The defendant was taken to the county jail and was there given an Intoxilyzer 5000 test at 10:21 p.m. His blood alcohol content registered .14%.
McHenry testified that at the jail he read theMiranda rights to the defendant and then asked him whether he had been drinking. He said the defendant replied in the affirmative, stating that he had had half a pint of whiskey. McHenry also asked, "Are you under the influence of alcoholic beverages at this time or at the time you were stopped?" According to McHenry, the defendant said, "Oh, yes."
At trial, the defendant admitted that prior to being stopped at 9:25 p.m., he had drunk two beers at 9:00 that evening. He denied telling the trooper that he had consumed half a pint of whiskey or responding "Oh, yes" to the question whether he was under the influence. He testified that he replied, "Oh, yes, I know I drank two beers."
The defendant argues that although the State proved his blood alcohol level was .14 at 10:21 p.m., it did not correlate that result with his condition at 9:25 p.m., the time he was stopped. Thus, he claims, there was insufficient evidence to prove that he was under the influence while driving, as required by § 32-5A-191, Code of Alabama 1975. A similar argument was raised and rejected in Terry v. City ofMontgomery, 549 So.2d 566 (Ala.Cr.App. 1989), in which this court observed the following:
 "A driver's intoxicated condition after an automobile accident [or, as in this case, after being stopped for speeding] is a fact from which the jury may infer that he was driving while in an intoxicated state. Bickerst[a]ff v. State, 516 So.2d 800 (Ala. 1987); Ayers v. State, 48 Ala. App. 743, 267 So.2d 533
(1972).
 ". . 'Where there is evidence from which the jury may by fair inference find the defendant guilty, the trial court should submit the case to the jury to determine the weight it will give the evidence and this court should not disturb the verdict.' "
549 So.2d at 567.
In Bickerstaff v. State, 516 So.2d 800 (Ala. 1987), the Alabama Supreme Court held, "The factors to be weighed in determining whether the defendant was in fact intoxicatedat the time of the offense are: (1) the testimony of the witnesses, (2) access to alcohol, and (3) the amount of time between the commission of the offense and the observation of the defendant." 516 So.2d at 801 (emphasis added). Trooper McHenry's testimony tended to establish the defendant's intoxication and lack of access to alcohol. Therefore, the factual question of whether the defendant was intoxicated while driving was an issue for the jury. Bickerstaff,516 So.2d at 801. We find the evidence sufficient to sustain the conviction.
 II
Trooper McHenry testified that the defendant "was under arrest for speeding" when his vehicle was stopped. However, he "hadn't allowed [the defendant] to sign the ticket yet" while he investigated his suspicion that the defendant was intoxicated.
Citing Hays v. City of Jacksonville, 518 So.2d 892
(Ala.Cr.App. 1987), and Morton v. State,452 So.2d 1361 (Ala.Cr.App. 1984), the defendant claims that the trooper's withholding the speeding ticket from him for his signature and bond constituted an illegal arrest in violation of § 32-1-4, Code of Alabama 1975. He therefore maintains that all evidence of statements given and tests made after that arrest should have been suppressed.
The defendant's "traffic arrest" for speeding was not illegal. As we observed in Pittman v. State,541 So.2d 583 (Ala.Cr.App. 1989):
 "Although Alabama Code 1975, § 32-1-4, generally forbids police officers from taking persons charged with the violation of minor traffic offense into the type of custody traditionally associated with a felony arrest, Hays v. City Jacksonville, 518 So.2d 892
(Ala.Cr.App. *Page 858 
1987), it does not prohibit the temporary detention or 'traffic arrest' of individuals for minor traffic offenses. Daniels v. State, 416 So.2d 760, 765 (Ala.Cr.App. 1982).
 " 'Traffic arrests' are 'more analogous' to the brief investigative detention authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Berkemer v. McCarty, 468 U.S. 420, 437-39, 104 S.Ct. 3138, 3148-49, 82 L.Ed.2d 317 (1984). See also State v. Betterton, 527 So.2d 743
(Ala.Cr.App. 1986), affirmed, Ex parte Betterton, 527 So.2d 747 (Ala. 1988). . . .
". . . .
 ". . . Section 32-1-4 does not prohibit the arrest of the traffic offender. It merely provides that, with certain exceptions, that offender shall be subjected only to limited detention or custody.
541 So.2d at 585.
Here, the defendant was subjected to only limited detention while Trooper McHenry attempted to confirm or dispel his suspicion that the defendant was under the influence. SeeBerkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138,3150, 82 L.Ed.2d 317 (1984) ("the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions"). The defendant's performance on the field sobriety tests provided Officer McHenry with probable cause to believe he was under the influence of alcohol, and the defendant was then properly arrested for DUI and taken into custody. His statements and the results of his blood alcohol test were not, therefore, fruits of an unlawful arrest.
 III
The defendant argues that the results of the Horizontal Gaze Nystagmus (HGN) test were erroneously admitted against him. Over defense counsel's objection, Trooper McHenry was allowed to state the results of the HGN test without a showing of either the reliability of the test itself or his training and experience in conducting the test. McHenry stated that there were at most six "clues" to be derived from the HGN test, and that the defendant "had four clues, meaning that his left and right eye had a lack of smooth pursuit and also had a distinct nystagmus, a jerking of the eye, at maximum deviation on both eyes."
In Malone v. City of Silverhill, 575 So.2d 101
(Ala.Cr.App. 1989), this court dealt for the first time with the question of admissibility of the HGN test results. We held that following a proper foundation regarding the scientific reliability of the test and the officer's expertise in conducting the test the HGN results were admissible. InMalone, we found that the predicate for the test results was not established and that the admission of the evidence was error, but a majority of this court determined that the error was harmless. Here, because the foundation was not established, the admission of Trooper McHenry's testimony about the HGN test was also error.
We cannot, however, find that the error was harmless, in light of the following facts: (1) Trooper McHenry testified that the defendant "did not fail" the alco-sensor, walk-and-turn, and one-leg-standing tests; he merely performed them "incorrectly;" (2) Trooper McHenry stated that the defendant's speech was not slurred; (3) Trooper McHenry said that when the defendant exited the cab of his (defendant's) truck, walked the length of the truck, and approached the trooper's vehicle there was nothing unusual in his gait, balance, or coordination; and (4) the defendant testified that he had been a professional trucker for 19 years, having driven between two and three million miles in his career and having received ten safety and performance awards during that time. At 8:00 p.m. on the evening in question, he picked up a tractor loaded with meat from John Merrill Meat Packing Plant, to drive it to Atlanta. He had to check in and check out through a guard at the plant and he was required to sign a bill of lading "with the guard standing directly beside [him]." The defendant testified that it was a "pretty strict rule" that "if you have been drinking, he is not going to let you leave." In *Page 859 
consideration of the foregoing conflicting facts, we cannot say that the admission of the HGN test results had no bearing on the jury's verdict of guilt, especially in view of the theory of the defense: namely, that defendant drank two beers immediately before being stopped by Trooper McHenry and that the alcohol had not yet reached his system at 9:25, but that it had "peaked" by the time he took the Intoxilyzer test at 10:21.
While defendant's .14% blood alcohol level at 10:21 authorized the jury to infer that he was under the influence at 9:25, it did not require that they so find. The statutory presumption of § 32-5A-194(b)(3) is permissive and rebuttable, not mandatory. Salazar v. State,505 So.2d 1287 (Ala.Cr.App. 1986).
Although there was sufficient evidence to convict the defendant without the HGN test result, the evidence was not undisputed or "overwhelming." Here, the erroneous admission of the HGN test adversely affected the defendant's right not to have the jury " 'give undue weight to [HGN] evidence [which] . . . appear[ed] to lend the certainty of an exact discipline to problematic factfinding.' " See Malonev. City of Silverhill, 575 So.2d at 106 (Bowen, J., dissenting). The jury might have accepted defendant's theory of the case — that he was under the influence when tested by Intoxilyzer at 10:21, but not while driving one hour earlier — but for the "certainty" of his earlier intoxication as shown very shortly after 9:25 by the HGN test. Thus, we cannot say that the HGN evidence was harmless.
For the error of admitting the HGN evidence without an adequate foundation, the defendant is entitled to a new trial.
REVERSED AND REMANDED.
All Judges concur.