Howard Wayne Brunson was charged with driving while under the influence of alcohol, in violation of § 32-5A-191(a)(2) and/or (a)(1), Code of Alabama 1975. He entered a plea of not guilty at his arraignment. He was convicted by a jury of driving under the influence of alcohol and was sentenced to the county jail for two days. His sentence was suspended and probation was granted for six months. He was fined $350.
On March 19, 1989, State Trooper Darby and Flomaton Police Officers Walston and Powers were conducting a driver's license and equipment check at a roadblock on Upper Creek Road in Escambia County, Alabama. At approximately 5:00 p.m., the appellant pulled up to the roadblock and presented his driver's license to Officer Walston. Trooper Darby began a routine check of the vehicle. He found that the vehicle had a defective horn and a missing taillight and he directed the appellant to pull over to the side of the road for a warning ticket. When the appellant got out of his vehicle, Trooper Darby noticed that the appellant had to hold on to the door for support, that his walk was unsteady, that his speech was slurred, and that he did not seem to have control of his facial expressions.
Trooper Darby administered a horizontal gaze nystagmus test (HGN). The appellant exhibited all six clues of intoxication on the nystagmus test. Trooper Darby believed the appellant to be intoxicated to a degree that he could not safely operate a vehicle. The appellant was placed under arrest for DUI.
The appellant was transported to the Flomaton Police Department, where a blood-alcohol test was administered to him on the Intoxilyzer 5000 machine. The results of the test were .163 percent. This appeal follows his conviction and sentence. *Page 63 
 I
The appellant first contends that the testimony concerning the HGN test was not properly admitted at trial. The appellant argues that it was error to allow Trooper Darby to testify as to conclusions concerning the HGN test. Trooper Darby was allowed to state the results of the HGN test without a showing of either the reliability of the test or the scientific principles upon which the HGN test is based. The officer's testimony is as follows:
"Q Did you administer those tests?
 "A I administered a horizontal gaze nystagmus. And then I asked him did he have any physical defects that would prevent him from performing any other test and he said he had a plastic knee. So, the only other test, I had him stand with his feet together and his hands to his side and had him close his eyes and tilt his head all the way back.
 "Q What happened — First of all, let me ask you this, have you been trained to perform these field tests?
"A Yes, sir.
"Q Where were you so trained?
 "A I spent three days at the Alabama Criminal Justice Training Center in Selma, Alabama.
"Q What is the purpose of these field tests?
 "MR. PRICE: I object. This man is not qualified to answer this question. It's hearsay.
"THE COURT: Overrule.
 "A To help us and give us a standard basis to help us determine impaired or intoxicated drivers.
 "Q (MR. GODWIN): Were you taught how a person who is not under the influence should perform?
"MR. PRICE: Object, leading.
"THE COURT: I overrule.
"A Yes, sir.
"Q And what else were you taught?
 "A Taught how people under the influence would perform.
 "Q All right, in response to or in your observation of the defendant's performance of this field test, how did he perform?
"A On the horizontal gaze nystagmus —
 "MR. PRICE: Your Honor, I'm going to object to any conclusion. If this officer is prepared to testify to a conclusion, I'm going to object to it on the same basis that it's hearsay and he's not qualified to testify. If he is going to describe what he saw without any conclusions, I will have no objections at this time.
 "MR. GODWIN: Judge, he's talking about his own conclusions from the performance on the test.
"MR. PRICE: That's what I object to, Your Honor.
 "THE COURT: I'm going to overrule your objection at this time and see what he says.
"MR. PRICE: All right.
 "Q (MR. GODWIN): First, how did he perform? Describe how he performed.
 "A The — Okay. On the horizontal gaze nystagmus Mr. Brunson gave all six clues what we are taught to look for.
"Q Okay.
"A You want me to list each clue by. . . .
 "Q Tell us generally — Well, tell us the clues. Go through it.
 "A What I do, I take a stimuli [sic], [such] as my pen here, and I hold it 12 to 15 inches from the subject's head at a slight angle. I have him focus in on the tip of this pen or whatever I'm holding and I have him follow it with his eyes. First, I'll make a fast pass, like this (indicating), and I'm following the eyeball. What I'm looking for is how steady his eye will follow this pen across his eye here.
"Q Okay.
 "A Then the next thing I do, I make another fast pass all the way over until there is no white left in his eye over here and he's focused in on this side of the pen and I look for jerking in the eyeball.
 "Then the third clue, I take my pen and pass along real slow and as they focus in. What I'm looking for this time is a shake in the eyeball before a 45-degree *Page 64 
onset or on most everybody about the shoulder.
 "Q Were you taught to conduct this test during that training?
"A Yes, sir.
 "Q You mentioned it's six points. Were you taught those points during your training?
"A Yes, sir, three for each eye." (R. 31-34.)
This court held in Malone v. City of Silverhill,575 So.2d 101 (Ala.Cr.App. 1989), reversed, Ex parte Malone,575 So.2d 106 (Ala. 1990), that once a proper foundation is laid regarding the scientific reliability of the test the HGN results are admissible. The Alabama Supreme Court, on certiorari review, held that because the proper foundation for the test results was not established the evidence might have had an adverse effect on the appellant's right to a fair trial; therefore that court reversed the judgment and remanded the cause.
Furthermore, the Alabama Supreme Court stated inMalone: "The problem created by the improper admission of the HGN evidence is due to the scientific nature of the test and the disproportionate impact it might have had on the jury's decision-making process. As noted by the Court of Criminal Appeals, a jury 'might give undue weight to [HGN] evidence since it may appear to lend the certainty of an exact discipline to problematic fact-finding.' Ex parte Malone, 575 So.2d at 104 (quoting G. Lilly, An Introduction to the Law ofEvidence 407 (1978)."
Here, because the foundation was not established, the admission of Trooper Darby's testimony about the HGN test was also error. Sides v. State, 574 So.2d 856 (Ala.Cr.App. 1990).
For the error of admitting the HGN evidence without adequate foundation, the appellant is entitled to a new trial.
 II
The appellant's second contention is without legal merit. The appellant argues that the stop and arrest at the roadblock violated his rights under the Alabama Constitution of 1901, Art. I, § 5. This court held in Cains v. State, 555 So.2d 290
(Ala.Cr.App. 1989), that "roadblocks operated pursuant to an objective and neutral plan of briefly halting all oncoming traffic are only minimally intrusive to the individual motorist and are thus constitutionally reasonable seizures." Cains, at 296. Here the evidence established such an "objective and neutral plan." The roadblock was not violative of the Alabama Constitution.
For the reasons stated, however, the judgment is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.