McMILLAN, Judge.
The appellant was convicted of “driving under the influence,” in violation of § 32-5A-191, Code of Alabama 1975, and was sentenced to 4 months’ imprisonment in the county jail, suspended, with a supervised probation of 18 months. He was ordered to pay a fine of $250 and was assessed court costs. The appellant was also convicted of “speeding,” in violation of § 32-5A-171, Code of Alabama 1975, and was ordered to pay a fine of $100 and was assessed court costs.
On October 5, 1988, at approximately 7:00 p.m., Alabama State Trooper Anthony Frost was monitoring Alabama Highway 14 just north of 1-65 when he observed the appellant’s vehicle coming around a curve at a high rate of speed. Trooper Frost activated his radar and clocked the appellant going 71 miles per hour in a 55 mile per hour zone. When Trooper Frost began pursuing the appellant’s vehicle, the appellant pulled off to the side of the road. Trooper Frost then approached the appellant’s vehicle and asked to see the appellant’s driver’s license. He then asked the appellant to come to his vehicle so that he could write him a speeding ticket. At that time, Trooper Frost noticed the strong odor of alcohol coming from the appellant’s person and upon closer examination noticed that the appellant’s eyes were bloodshot and watery. Trooper Frost administered the Horizonal Gaze Nystagmus (HGN) test. The appellant exhibited four indicia of intoxication on the HGN test. Trooper Frost testified that he then placed the appellant under arrest for DUI. The appellant was transported to the detention facility where the Intoxilyzer 5000 test was administered. The results of the Intoxilyzer 5000 revealed that the appellant had a blood alcohol content of .138 percent.
The appellant contends that the trial court erred in permitting the results of the HGN test into evidence. Specifically, he argues 1) that “the HGN test has not been admitted as competent evidence in the State of Alabama”; and 2) that “[i]t was error for Trooper Frost to testify to results of a ‘scientific’ test without being qualified to interpret the same.”
The State argues that the appellant never specifically objected to the fact that the prosecutor failed to lay a proper predicate for the admission of the HGN test results and, thus, failed to preserve this issue for appellate review.
The following testimony of Trooper Frost is pertinent to the resolution of this dispute:
“A [Trooper Frost]: I administered several field tests to [the appellant]. The first being the Alka-sensor, which gave me probable cause to continue my field *604 tests. The second one being the horizontal gaze nystagmus.
“Q [Prosecutor]: Explain to the jury as to what that is and how to—
“[Defense counsel]: Judge, I do want to enter my objection as not being properly adopted by the Legislature of Alabama.
“THE COURT: I’ll overrule. Go ahead and explain what it is.
“A It’s a simple test where I ask you if there’s anything wrong with your eyes before I give you the test. Like, do you wear glasses or so on? Mr. Desselle said, yes, he wears glasses but only for reading. He can’t see things up close. I then have him tell me the color of the tip of my ink pen, which is black and have him take his right index finger and touch the tip of the ink pen for me so he knows where the pen is and the color of the pen. I then advised him to follow the tip of the ink pen with his eyes only without turning his head. The test is — The things to look for in the test to determine the—
“[Defense counsel]: Your Honor, I object to what the test says now.
“THE COURT: I’m going to overrule. You’re familiar with the test?
“[Trooper Frost]: Yes, sir, I am.
“THE COURT: And have you had some education regarding the test?
“[Trooper Frost]: Yes, sir, I have.
“THE COURT: Tell me what education you received.
“[Trooper Frost]: I received a two-day course at Selma for administering field tests. I have a certificate to prove that, also.
“THE COURT: All right, sir. You may go ahead.
"[Trooper Frost]: I then have him follow the tip of the pen to maximum deviation, and I look for six things — three things in each eye. The first being a lack of smooth pursuit, meaning something similar to a marble rolling across a rough surface. The second being a distinct jerking at maximum deviation being the farthest that you can get your eyes to the corner. The [third] being a distinct jerking before 45 degrees.
“[Prosecutor]: All right, sir. And did you get these clues that you were looking for?
“[Trooper Frost]: Mr. Desselle showed four—
“[Defense counsel]: Your Honor, I do want to enter an objection for the record as far as any results.
“THE COURT: I’ll overrule.
“[Trooper Frost]: Mr. Desselle showed four of the results being the lack of smooth pursuit, the distinct jerking maximum deviation, and he showed distinct jerking at around 45 degrees. I only counted four though. It indicated impairment.”
After reviewing the pertinent portion of the record in this case, we must disagree with the State that the appellant’s objection lacked specificity. The appellant clearly apprised the court of the nature of his objections in that the trial court started questioning Trooper Frost concerning his background in administering the HGN test. Cf. Ex parte Weaver, 530 So.2d 258 (Ala.1988); Petite v. State, 520 So.2d 207 (Ala.Cr.App.1987); Rule 14, A.R.Cr.P.Temp. We are, therefore, compelled to consider the appellant’s contentions.
In Sides v. State, 574 So.2d 856 (Ala.Cr.App.1990), this Court held that the admission of evidence regarding the results of an HGN test, without a proper predicate showing the test’s reliability, was reversible error. In Ex parte Sides, 574 So.2d 859 (Ala.1990), the Alabama Supreme Court, on certiorari review, held that “[T]he Court of Criminal Appeals correctly determined that the admission of the HGN test evidence was not harmless error.” 574 So.2d at 859. The Supreme Court further stated that “[W]e do not necessarily agree with the implicit holding that HGN test results would be admissible in future cases if the State laid the proper predicate. This Court has not been presented with sufficient evidence concerning the test’s reliability or acceptance by the scientific community to address that question.” Id. at 859. See *605 also Brunson v. State, 580 So.2d 62 (Ala.Cr.App.1991).
Because the proper foundation was not established in the instant case for the admittance of the HGN test, the judgment of the trial court is reversed and the case remanded with instruction for a new trial.
REVERSED AND REMANDED
All Judges concur.