703 So.2d 423 (1997)
Phillip Lynn CUMBIE
v.
CITY OF MONTGOMERY.
CR-95-1894.
Court of Criminal Appeals of Alabama.
March 21, 1997.
Rehearing Denied May 2, 1997.
Certiorari Denied August 29, 1997.
John T. Kirk, Montgomery, for appellant.
William Azar, Montgomery, for appellee.
Alabama Supreme Court 1961358.
*424 COBB, Judge.
Phillip Lynn Cumbie appeals from his conviction and sentence for driving under the influence, pursuant to the City of Montgomery Code ch. 1, § 1-9 (1980). We affirm.
The testimony at trial showed that at approximately 3:00 a.m. on May 3, 1995, Cumbie drove a pickup truck across the center line of the road, causing a police cruiser in the oncoming lane to run off the road to avoid a head-on collision. Officer Guy Naquin and his partner pursued Cumbie and stopped him. Cumbie got out of the truck and staggered sideways. When he got out, he left the truck in reverse gear and it rolled backward toward the officers, who yelled at Cumbie to stop the truck, and he did. Officer Naquin testified that when they stopped Cumbie, his speech was very slurred, he had difficulty understanding questions, he could not stand up without holding onto his truck, and he had a strong odor of alcohol on his breath. Officer Naquin also testified that Cumbie could not "divide his attention" and perform two activities, such as answering a question and searching for his driver's license, at the same time. Based on these observations, Officer Naquin suspected that Cumbie was under the influence.
Office Naquin testified that he did not conduct certain field sobriety teststhe onelegged stand test or the walk and turn test because those tests involved balance and divided attention skills, and the officer did not believe that Cumbie could perform them without falling and hurting himself. The officer administered the horizontal gaze nystagmus (HGN) test, which involves observations of a person's eyes as they focus on an object moved gradually in front of them. In a hearing outside the jury's presence, Office Naquin testified as to the HGN test and his experience in administering it. At the conclusion of the hearing, defense counsel objected to the evidence on the ground that "Alabama has not adopted HGN as scientifically acceptable as determining a person's alcohol content as being above or below legal intoxication." The trial court overruled the objection and permitted Officer Naquin to testify regarding the HGN test. Officer Naquin also stated that Cumbie's performance on the HGN test indicated to him that Cumbie was impaired to the point that he could not safely drive and that the impairment might be alcohol related. The officer further testified that his opinion that Cumbie was unable to drive safely was based on his observations of Cumbie's driving, his observations of Cumbie's behavior, and his investigation.
Officer Naquin testified that he arrested Cumbie for driving under the influence and that he then took Cumbie to the police station. He stated that Cumbie declined to take a breath test.
The jury found Cumbie guilty of driving under the influence, and the trial court adjudicated Cumbie guilty. The court sentenced Cumbie to six months in jail, and suspended all but 48 hours of the sentence.
On appeal, Cumbie argues only that the trial court erred in admitting evidence regarding the HGN test, because, he says, the prosecution failed to establish that the test was scientifically reliable and failed to prove that Officer Naquin was qualified to administer the test. We need not reach this issue, however, because even if evidence regarding the HGN test was erroneously admitted, it was harmless beyond a reasonable doubt. Although not dispositive of the issue, we note that the evidence of Cumbie's intoxication, even without the evidence provided by the HGN test, was overwhelming. After forcing the police officers to drive off the road to avoid a head-on collision, Cumbie, at the officers' insistence, had to return to his truck because he had left it in reverse gear. He staggered, his speech was slurred, he could not understand questions posed to him, he could not stand without holding onto his truck, and he smelled strongly of alcohol. Moreover, he refused to take a breath test. Cumbie argues to this court that it is important to note that the arresting officers chose not to administer any field sobriety tests other than the HGN test. We also find this to be significant; we note, however, that Officer Naquin testified that he did not administer other field sobriety tests because he believed that if he asked Cumbie to perform the tests, Cumbie would fall down and hurt himself. Contrary to Cumbie's assertion, the evidence against him was undisputed and *425 overwhelming, even without evidence of the HGN test results. Any error in the admission of the HGN evidence was harmless beyond a reasonable doubt. Ex parte Hutcherson, 677 So.2d 1205, 1209 (Ala.1996); Rose v. State, 598 So.2d 1040 (Ala.Crim.App.1992); Rule 45, Ala. R.App. P.
We acknowledge that in Ex parte Malone, 575 So.2d 106 (Ala.1990), and in Sides v. State, 574 So.2d 856 (Ala.Cr.App.), aff'd, 574 So.2d 859 (Ala.1990), admission of HGN evidence was held not to be harmless error. The courts in those cases held that a harmless error finding was inappropriate because the evidence remaining after eliminating the HGN evidence was not undisputed or overwhelming, and because the jury might have given the HGN evidence undue weight because it appeared to be certain and scientific evidence rather than "problematic factfinding." This case is distinguishable from those, however, because the HGN evidence was not presented as certain evidence and was not accorded undue weight, and because the evidence remaining, even without the HGN test results, was undisputed and overwhelming.
As to the HGN evidence, the officer testified before the jury that the test is part of a battery of field sobriety tests and stated that it involves observations of an individual's eyes as they track a small object as it is moved back and forth in front of the individual. He testified that he looks for certain specific clues, which he then explained to be related to how smoothly the eyes track the object. The test was not presented to the jury as a scientific test, and the officer was not declared an expert in its administration. To the contrary, the court instructed the jury that the HGN test was a field sobriety test and that the purpose of a field sobriety test was to monitor whether a person's coordination was impaired due to alcohol consumption. The court further instructed the jury that the HGN field sobriety test permitted the officer to testify that he believed Cumbie was impaired and that one cause of the impairment could be the ingestion of alcohol. The court further instructed the jurors that they could accept or reject the HGN testimony, and that they were to determine whether Cumbie was impaired and what caused any impairment they found to exist. Finally, the court instructed:
"You are to consider, though, in determining whether or not he was impaired to the extent he couldn't operate the car safely all of the evidence in this case, not just the Horizontal Gaze Nystagmus, but all of the evidence in the case."
The HGN evidence was treated as one of the many pieces of evidence resulting from the officer's observations of Cumbie. As with the HGN evidence, the trial court specifically instructed the jury that it was to consider the testimony that Cumbie was unsteady on his feet, that he slurred his words, that he smelled of alcohol, that he could not divide his attention, and that he refused to take a breath test. The HGN evidence was presented to the jury as a field test,[1] not as a scientific test that produced certain results, and it was accorded no more weight than the officer's other field observations. Therefore, Ex parte Malone and Sides are distinguishable and do not preclude application of the harmless error rule here.
As noted in our discussion, above, the remaining evidence against Cumbie was overwhelming and undisputed. This, too, distinguishes Ex parte Malone and Sides, and supports our determination that any error in the admission of the HGN test was harmless beyond a reasonable doubt.
Based on the foregoing, we affirm the conviction and sentence.
AFFIRMED.
All the Judges concur, except BASCHAB, J., who dissents with opinion.
*426 BASCHAB, Judge, dissenting:
I respectfully dissent from the majority's holding that the admission of evidence of HGN test results was harmless error.
The majority acknowledges that the admission of similar evidence was held not to be harmless error in Ex parte Malone, 575 So.2d 106 (Ala.1990), and in Sides v. State, 574 So.2d 856 (Ala.Cr.App.), aff'd, 574 So.2d 859 (Ala.1990). The majority then states:
"The courts in those cases held that a harmless error finding was inappropriate because the evidence remaining after eliminating the HGN evidence was not undisputed or overwhelming, and because the jury might have given the HGN evidence undue weight because it appeared to be certain and scientific evidence rather than `problematic factfinding.'"
The majority distinguishes these two cases from this case because the evidence in this case is overwhelming that the appellant was intoxicated.
I believe the majority misconstrues the holdings in Malone and Sides. In Malone, the Alabama Supreme Court stated:
"The problem created by the improper admission of the HGN evidence is due to the scientific nature of the test and the disproportionate impact it might have had on the jury's decision-making process. As noted by the Court of Criminal Appeals, a jury `"might give undue weight to [HGN] evidence since it may appear to lend the certainty of an exact discipline to problematic factfinding."' [Malone v. City of Silverhill,] 575 So.2d [101] at 104 [(Ala.Cr.App.1989)] (quoting G. Lilly, An Introduction to the Law of Evidence 407 (1978))."
575 So.2d at 107. Recently, the Alabama Supreme Court explained the harmless error doctrine in the context of scientific tests:
"`Harmless error' is defined as `an error which is trivial or formal or merely academic and was not prejudicial to the substantial rights of the party assigning it and in no way affected the final outcome of the case.' Black's Law Dictionary 718 (6th ed. 1990). In order to secure a reversal of a judgment, an appellant not only must show error, but also must demonstrate that the error resulted in a substantial injury. Rule 45, A.R.App.P. Overwhelming evidence of guilt does not render prejudicial error harmless under Rule 45. Ex parte Lowe, 514 So.2d 1049 (Ala.1987).
"In a case somewhat similar to this one, Malone v. City of Silverhill, 575 So.2d 101 (Ala.Cr.App.1989), involving a prosecution for driving under the influence of alcohol, the Court of Criminal Appeals held that the erroneous admission of the results of an `HGN' test without a proper predicate was harmless error because there was other overwhelming evidence of guilt. We reversed, holding that the erroneous admission of the results of an `HGN' test without a proper predicate required reversal, regardless of the other evidence of guilt. Ex parte Malone, 575 So.2d 106 (Ala.1990). Specifically, we stated that the problem with the improper admission of the evidence was attributable [`]to the scientific nature of the test and the disproportionate impact it might have had on the jury's decision-making process.' 575 So.2d at 107.
"`"Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."` Ex parte Greathouse, 624 So.2d 208 (Ala.1993), quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1982 [1967]). We hold that the admission of the DNA evidence was not harmless beyond reasonable doubt. The prejudicial impact of both DNA `matching' evidence and DNA population frequency statistics creates such a possibility for prejudicial impact upon the jury that the admission of DNA evidence without complying with [Ex parte] Perry [586 So.2d 242 (Ala.1991)] can never be harmless error. Perry sets out the predicate for properly admitting DNA evidence, and it must be followed in order to ensure the reliability and trustworthiness of the evidence. The prejudicial impact of scientific testimony, such as that relating to DNA, can unduly influence a jury; it must have a proper foundation before it is presented." *427 Ex parte Hutcherson, 677 So.2d 1205, 1209 (Ala.1996) (emphasis added).
To date, the Alabama Supreme Court has not allowed the admission into evidence of the results of an HGN test in a trial because the test has yet to be shown to be scientifically reliable. Contrary to the City of Montgomery's contention in its brief that the HGN test has been accepted as a valid scientific test, the Alabama Supreme Court has stated:
"[T]his Court concludes that the Court of Criminal Appeals correctly determined that the admission of the HGN test evidence was not harmless error. While we agree with that holding, we do not necessarily agree with the implicit holding that HGN test results would be admissible in future cases if the State laid the proper predicate. This Court has not been presented with sufficient evidence concerning the test's reliability or acceptance by the scientific community to address that question."

Sides v. State, 574 So.2d 859, 859 (Ala.1990) (emphasis added) (citations omitted). See also, Desselle v. State, 596 So.2d 602 (Ala.Cr. App.1991).
Because the HGN test has yet to be accepted as a valid scientific test, there is currently no way to lay a proper predicate for the admission of HGN test results. Therefore, in this case, it was reversible error for the trial court to allow the introduction of evidence of the HGN test and the results from the said test.
The majority attempts to evade this problem by stating that "[t]he HGN evidence was presented to the jury as a field test, not a scientific test that produced certain results, and it was accorded no more weight than the officer's other field observations." (footnote omitted). This statement is contrary to the existing law of this state. Both this court and the Alabama Supreme Court have held that the HGN test is a scientific test and that it must meet the same requirements of admissibility of any scientific test. See e.g., Malone, supra; Sides, supra; Blake v. State, 581 So.2d 1282 (Ala.Cr.App.1991).
There was not a proper predicate laid for the introduction of HGN test results and, following Hutcherson, admission of such improper scientific evidence can never be harmless error. We should reverse the judgment of the trial court and remand this case for a new trial.
Therefore, I respectfully dissent.
NOTES
[1] As the testimony at trial revealed, the HGN test is often considered one in a battery of field sobriety tests; that battery typically includes the one-legged stand test, the walk and turn test, and the touch your nose test, and all are designed to disclose physical manifestations of intoxication. Therefore, it seems inconsistent to require the evidentiary foundation for the admission of expert scientific testimony when, as here, HGN evidence is not submitted as scientific evidence. A North Dakota case, City of Fargo v. McLaughlin, 512 N.W.2d 700, 703-708 (N.D.1994), contains an excellent discussion of the split of authority on this issue and holds that HGN test is no more scientific than the other field sobriety tests and does not require expert testimony as to scientific validity.