Phillip Lynn Cumbie appeals from his conviction and sentence for driving under the influence, pursuant to the City of Montgomery Code ch. 1, § 1-9 (1980). We affirm.
The testimony at trial showed that at approximately 3:00 a.m. on May 3, 1995, Cumbie drove a pickup truck across the center line of the road, causing a police cruiser in the oncoming lane to run off the road to avoid a head-on collision. Officer Guy Naquin and his partner pursued Cumbie and stopped him. Cumbie got out of the truck and staggered sideways. When he got out, he left the truck in reverse gear and it rolled backward toward the officers, who yelled at Cumbie to stop the truck, and he did. Officer Naquin testified that when they stopped Cumbie, his speech was very slurred, he had difficulty understanding questions, he could not stand up without holding onto his truck, and he had a strong odor of alcohol on his breath. Officer Naquin also testified that Cumbie could not "divide his attention" and perform two activities, such as answering a question and searching for his driver's license, at the same time. Based on these observations, Officer Naquin suspected that Cumbie was under the influence.
Office Naquin testified that he did not conduct certain field sobriety tests — the one-legged stand test or the walk and turn test — because those tests involved balance and divided attention skills, and the officer did not believe that Cumbie could perform them without falling and hurting himself. The officer administered the horizontal gaze nystagmus (HGN) test, which involves observations of a person's eyes as they focus on an object moved gradually in front of them. In a hearing outside the jury's presence, Office Naquin testified as to the HGN test and his experience in administering it. At the conclusion of the hearing, defense counsel objected to the evidence on the ground that "Alabama has not adopted HGN as scientifically acceptable as determining a person's alcohol content as being above or below legal intoxication." The trial court overruled the objection and permitted Officer Naquin to testify regarding the HGN test. Officer Naquin also stated that Cumbie's performance on the HGN test indicated to him that Cumbie was impaired to the point that he could not safely drive and that the impairment might be alcohol related. The officer further testified that his opinion that Cumbie was unable to drive safely was based on his observations of Cumbie's driving, his observations of Cumbie's behavior, and his investigation.
Officer Naquin testified that he arrested Cumbie for driving under the influence and that he then took Cumbie to the police station. He stated that Cumbie declined to take a breath test.
The jury found Cumbie guilty of driving under the influence, and the trial court adjudicated Cumbie guilty. The court sentenced Cumbie to six months in jail, and suspended all but 48 hours of the sentence.
On appeal, Cumbie argues only that the trial court erred in admitting evidence regarding the HGN test, because, he says, the prosecution failed to establish that the test was scientifically reliable and failed to prove that Officer Naquin was qualified to administer the test. We need not reach this issue, however, because even if evidence regarding the HGN test was erroneously admitted, it was harmless beyond a reasonable doubt. Although not dispositive of the issue, we note that the evidence of Cumbie's intoxication, even without the evidence provided by the HGN test, was overwhelming. After forcing the police officers to drive off the road to avoid a head-on collision, Cumbie, at the officers' insistence, had to return to his truck because he had left it in reverse gear. He staggered, his speech was slurred, he could not understand questions posed to him, he could not stand without holding onto his truck, and he smelled strongly of alcohol. Moreover, he refused to take a breath test. Cumbie argues to this court that it is important to note that the arresting officers chose not to administer any field sobriety tests other than the HGN test. We also find this to be significant; we note, however, that Officer Naquin testified that he did not administer other field sobriety tests because he believed that if he asked Cumbie to perform the tests, Cumbie would fall down and hurt himself. Contrary to Cumbie's assertion, the evidence against him was undisputed and *Page 425 
overwhelming, even without evidence of the HGN test results. Any error in the admission of the HGN evidence was harmless beyond a reasonable doubt. Ex parte Hutcherson, 677 So.2d 1205,1209 (Ala. 1996); Rose v. State, 598 So.2d 1040
(Ala.Crim.App. 1992); Rule 45, Ala. R.App. P.
We acknowledge that in Ex parte Malone, 575 So.2d 106
(Ala. 1990), and in Sides v. State, 574 So.2d 856 (Ala.Cr.App.),aff'd, 574 So.2d 859 (Ala. 1990), admission of HGN evidence was held not to be harmless error. The courts in those cases held that a harmless error finding was inappropriate because the evidence remaining after eliminating the HGN evidence was not undisputed or overwhelming, and because the jury might have given the HGN evidence undue weight because it appeared to be certain and scientific evidence rather than "problematic factfinding." This case is distinguishable from those, however, because the HGN evidence was not presented as certain evidence and was not accorded undue weight, and because the evidence remaining, even without the HGN test results, was undisputed and overwhelming.
As to the HGN evidence, the officer testified before the jury that the test is part of a battery of field sobriety tests and stated that it involves observations of an individual's eyes as they track a small object as it is moved back and forth in front of the individual. He testified that he looks for certain specific clues, which he then explained to be related to how smoothly the eyes track the object. The test was not presented to the jury as a scientific test, and the officer was not declared an expert in its administration. To the contrary, the court instructed the jury that the HGN test was a field sobriety test and that the purpose of a field sobriety test was to monitor whether a person's coordination was impaired due to alcohol consumption. The court further instructed the jury that the HGN field sobriety test permitted the officer to testify that he believed Cumbie was impaired and that one cause of the impairment could be the ingestion of alcohol. The court further instructed the jurors that they could accept or reject the HGN testimony, and that they were to determine whether Cumbie was impaired and what caused any impairment they found to exist. Finally, the court instructed:
 "You are to consider, though, in determining whether or not he was impaired to the extent he couldn't operate the car safely all of the evidence in this case, not just the Horizontal Gaze Nystagmus, but all of the evidence in the case."
The HGN evidence was treated as one of the many pieces of evidence resulting from the officer's observations of Cumbie. As with the HGN evidence, the trial court specifically instructed the jury that it was to consider the testimony that Cumbie was unsteady on his feet, that he slurred his words, that he smelled of alcohol, that he could not divide his attention, and that he refused to take a breath test. The HGN evidence was presented to the jury as a field test,[1] not as a scientific test that produced certain results, and it was accorded no more weight than the officer's other field observations. Therefore, Ex parte Malone and Sides are distinguishable and do not preclude application of the harmless error rule here.
As noted in our discussion, above, the remaining evidence against Cumbie was overwhelming and undisputed. This, too, distinguishes Ex parte Malone and Sides, and supports our determination that any error in the admission of the HGN test was harmless beyond a reasonable doubt.
Based on the foregoing, we affirm the conviction and sentence.
AFFIRMED.
All the Judges concur, except BASCHAB, J., who dissents with opinion. *Page 426 
[1] As the testimony at trial revealed, the HGN test is often considered one in a battery of field sobriety tests; that battery typically includes the one-legged stand test, the walk and turn test, and the touch your nose test, and all are designed to disclose physical manifestations of intoxication. Therefore, it seems inconsistent to require the evidentiary foundation for the admission of expert scientific testimony when, as here, HGN evidence is not submitted as scientific evidence. A North Dakota case, City of Fargo v. McLaughlin,512 N.W.2d 700, 703-708 (N.D. 1994), contains an excellent discussion of the split of authority on this issue and holds that HGN test is no more scientific than the other field sobriety tests and does not require expert testimony as to scientific validity.