The appellant, Arney Lynn Scott, was convicted of driving under the influence of alcohol, a violation of §32-5A-191(a)(2), Code of Alabama 1975. He was sentenced to one year in jail, which was suspended with two years on probation, was fined $500 and court costs, and was ordered to perform community service work for one year.
The state's evidence tended to show that on the evening of December 30, 1988, the appellant was involved in an automobile accident on U.S. Highway 431 near Guntersville. Shortly after the accident, police officers arrived at the scene. They smelled alcohol on the appellant's breath and they believed that he was intoxicated. The appellant had suffered a broken collarbone as a result of the accident and was taken to a nearby hospital for treatment. While at the hospital, he was asked to undergo a blood test so that the alcohol content of his blood could be measured. The appellant consented to the test, and his blood alcohol level was determined to be .16 percent. *Page 1275 
 I
The appellant initially argues that the trial court erred in limiting his cross-examination of Officer James Patterson of the Guntersville Police Department. Officer Patterson was provisionally appointed a police officer in July 1988 and had nine months from that date within which to complete his police academy training and become a certified police officer. The appellant maintains that the trial court erred to reversal by limiting his cross-examination of Patterson concerning the expiration of his appointment before he could complete the academy training. The appellant contends that this line of questioning bore upon "Patterson's memory, accuracy, credibility, interest, sincerity, intellectual bias or emotional hostility." The following occurred during the cross-examination of Officer Patterson:
 "Q [Defense Counsel] — And you were familiar with the fact that you were to go to the police academy before you got your certificate of being a police officer, you're familiar with that?
"A — Yes.
 "Q — Well, you didn't go to the police academy until, I believe, it was June of 1989; isn't that true?
"A — That's correct.
 "Q — So from July — that would be about eleven months before you went to the police training school?
"A — Correct.
 "Q — And then you got your certificate to be a police officer from the State of Alabama Standards and Training Commission on August 4, 1989; is that correct?
 "A — The best I recall. I'm sure you have the date.
 "Q — Are you familiar with the fact that after you were a police officer for nine months without getting your certificate, your appointment as a police officer was null and void and of no effect?
 "[Prosecutor]: Judge, I'm going to object to this. I don't see how it's relevant and material to the issue at hand. "The Court: I think sustained. That would have nothing to do with the investigation at this point. Sustained."
 "Q [By Mr. Parker] — Well, let me put it this way: You didn't get your certificate to be a bona fide police officer until August of '89, did you?
"A — I was not certified —
 "Mr. Warnes [Prosecutor]: We renew our objection.
"The Court: Overruled.
"Q [By Mr. Parker] — Did you, sir?
 "A — I was not certified by the academy until August of '89.
 "Q — I'm talking about the State of Alabama, Alabama Peace Officers Standards and Training Commission in Montgomery, Alabama, didn't certify you until —
 "Mr. Warnes: Judge, I'm going to object to this line of —
"Q — until August the 4th of '89, did they?
 "Mr. Warnes: I'm going to object to this. Now —.
"The Court: Sustained.
 "Mr. Parker: We offer to prove what I just asked him, Judge, that the answer would be yes.
"The Court: All right, sir."
The keystone of our judicial system is the opportunity to cross-examine one's accuser. The scope of cross-examination of a witness is a matter controlled by law. Section 12-21-137, Code of Alabama 1975, states in pertinent part:
 "The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him. . . ."
See also Ala. Const. 1901, Article I, § 6:
 ". . . [T]he cross-examining party has the absolute right on cross-examination, not only to inquire as to matters relevant to the issues . . . but also to inquire into the conduct and circumstances of the witness which have measurable bearing upon his credibility. This right to a party to have thorough and sifting cross-examination is provided by statute."
C. Gamble, McElroy's Alabama Evidence § 136.01 (4th ed. 1991).
The appellant did have the opportunity to question the witness concerning his provisional appointment as a police officer. *Page 1276 
While this may be a borderline fact situation, we have the impression that the appellant established his two elements of impeachment. He showed that the officer was not in school at the time of this occurrence and that the officer failed to become accredited within the time permitted by the rules. Thus, further questioning on this same point would be cumulative.Bell v. State, 385 So.2d 78 (Ala.Cr.App. 1980); C. Gamble, McElroy's Alabama Evidence § 10.07 (4th ed. 1991), and cases cited therein. There was ample evidence presented on this matter for the jury to consider when assessing the credibility of Officer Patterson.
 II
The appellant next argues that the trial court erred in receiving evidence of his blood alcohol level. Specifically, he contends that no sufficient predicate was laid for the receipt of the blood test results because the statutory requirements of § 32-5A-194, Code of Alabama 1975, were not met and the steps articulated in Ex parte Bush, 474 So.2d 168
(Ala. 1985),[1] were not established.
There are two ways to establish a foundation for the receipt of evidence concerning the alcohol or controlled substance level in the blood, urine, breath, or body specimens. C. Gamble, McElroy's Evidence § 490.01(2) (4th ed. 1991).
 "First, it may be proffered under general evidentiary principles governing the authentication of all scientific test results. These general principles are summarized in the following judicial language:
 " 'While we find no Alabama cases which specifically outline all the requisite elements of a predicate for the admission of scientific test results, it is generally held that such a predicate must show that the circumstances of the taking of the sample, the identification, maintenance, and transporting of it, and the testing itself are scientifically acceptable and reasonably expected to produce results which are accurate and reliable.'
 "Alternatively, however, the foundation may be laid by showing that the specimen was taken and tested in compliance with the prescribed statutory procedure. The Alabama Supreme Court has interpreted the statute governing blood, urine, breath and body specimens, offered to show alcohol or controlled substances, as prescribing the following steps in laying the predicate for admissibility. [§ 32-5-194, Code of Alabama 1975, see Ex parte Bush, 474 So.2d 168
(Ala. 1985)]. . . .
 "Whether one chooses to lay the proper predicate through general evidentiary principles or by compliance with the foregoing statute, there must always be a showing of continuous chain of custody as to both the subject person and the sample taken from him."
McElroy's Alabama Evidence § 490.01(2). (Footnotes omitted.) (Emphasis added.)
In this case, the blood tests were correctly received into evidence because general evidentiary principles had been satisfied. Rebecca Smith, a medical technologist, testified that she drew three vials of blood from the appellant after obtaining his permission. She gave one vial to Officer Patterson. Officer Patterson kept this vial in his custody until he delivered it to Dr. Joerg Pirl at the Alabama Department of Forensic Sciences in Birmingham. Dr. Pirl testified in depth to the procedures used in testing the sample and the general acceptance in the scientific community of those procedures in testing blood for the presence of alcohol. A chain of custody and procedures used for the scientific testing itself were therefore thoroughly established. No error occurred here. *Page 1277 
 III
Last, the appellant argues that the trial court's instructions to the jury were flawed. The court gave the following instruction:
 "Driving under the influence of alcohol is driving after having consumed alcohol to the extent where it has impaired one's capacity to drive an automobile safely regardless of the degree of influence."
(Emphasis added.)
The appellant contends that the underlined portion of the above-quoted instruction violates the Alabama Supreme Court's holding in Ex parte Buckner, 549 So.2d 451 (Ala. 1989), that the prosecution must show, for purposes of satisfying § 32-5A-191(a)(2), Code of Alabama 1975, that the accused " 'consumed such an amount of alcohol as to affect his ability to operate a vehicle in a safe manner.' "Buckner, 549 So.2d at 454, quoting §32-5A-191(a)(2).
In the present case the appellant was charged under §32-5A-191(a)(2), which states:
 "(a) A person shall not drive or be in actual physical control of any vehicle while:
"(2) Under the influence of alcohol."
It is not necessary for purposes of § 32-5A-191(a)(2) that the appellant's level of intoxication reach .10 percent. This section requires a different element of proof than §32-5A-191(a)(1) which states:
 "(a) A person shall not drive or be in actual physical control of any vehicle while:
 "(1) There is 0.10 percent or more by weight of alcohol in his blood."
Further, when an individual is charged with driving under the influence under § 32-5A-191(a)(2), the state does not have to present proof of level of the individual's intoxication.Cains v. State, 555 So.2d 290 (Ala.Cr.App. 1989). Because the state is not required, when prosecuting under §32-5A-191(a)(2), to show the level of intoxication, the trial court's instruction was a correct statement of the law and did not violate the Alabama Supreme Court's holding inBuckner. No error occurred here.
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Bush states: (1) It must be shown that the law enforcement agency has adopted the type of testing that was in fact utilized; (2) It must be shown that the operator possessed a valid permit issued by the Department of Forensic Sciences to administer such tests; and (3) It must be shown that the test was performed in accordance with the procedures set out by the Department of Forensic Sciences. Bush,474 So.2d at 170. The Department of Forensic Sciences is now the approving agency. Section 32-5A-194 was amended to reflect this in 1988.