The appellant, Randall Lloyd Hagood, was convicted in Town Creek municipal court of driving under the influence (DUI), disorderly conduct, and resisting arrest. He appealed to Lawrence Circuit Court for a trial de novo and was convicted by a jury of DUI and of disorderly conduct. The jury acquitted him of resisting arrest. On the DUI conviction, the appellant was fined $500, was ordered to pay court costs, and was sentenced to seven days in the county jail. The jail sentence was suspended upon payment of the fine and court costs. On the disorderly conduct conviction, the appellant was fined $350 and was ordered to pay court costs. On this direct appeal from the circuit court convictions, the appellant raises two issues.
 I
The charges against the appellant arose when he was stopped at a roadblock being operated by Town Creek police officers. The appellant contends that this roadblock was unconstitutional and that, consequently, all the evidence against him, which was seized as a result of that roadblock, should have been suppressed.
At the pre-trial suppression hearing, Town Creek Police Chief Kenneth Holland testified that, on the night of May 25, 1991, he, Assistant Chief Donavan Hagwood, and Officers Bob Gordon and Jessie Borden operated a roadblock on Church Street in the northern end of town. The officers "stayed a couple of hours and it wouldn't [sic] no traffic there at all," R. 21, so they moved the roadblock to the intersection of Auburn Street and Mauldin Street. The appellant was stopped at this second roadblock.
Assistant Chief Hagwood testified that Mauldin Street "deadends into" Auburn Street. R. 25. It appears from the testimony of Holland and Hagwood that the Town Creek Apartments are located at this intersection and that Mauldin Street essentially becomes the entrance to the apartments.
Holland and Hagwood stated that the roadblocks were conducted upon the "mutual agreement" of the four officers. R. 10, 29-30. Holland testified that he had apprised the mayor and the city council at a city council meeting that he "was going to have a license check, road block, two in that town the following week," because he "had to get the overtime approved." R. 10.
Chief Holland testified that the officers placed two patrol cars at the stop sign on Mauldin Street. Assistant Chief Hagwood stopped all traffic coming into the intersection on Mauldin Street, while Chief Holland and the two officers stopped all traffic traveling in either direction on Auburn Street. Although there had been no formal training on the matter, Hagwood stated that the officers "check[ed] each vehicle the same no matter what." R. 26. Chief Holland testified that the stops were "just long enough to look at [a driver's] license and check his tag and so forth." R. 12. After the appellant was arrested, the roadblock was disbanded "for lack of manpower to keep it open." R. 31.
When asked to describe the safety precautions taken by the officers at the roadblock, Chief Holland stated: "We had the parking lights on the car, the two patrol cars there, and we had these mag flash lights with the honey combs on them, the red, yellow, just like a stick — " R. 12. Holland stated that the red or yellow "sticks" were "a half a foot or more" in length, R. 12, and could be seen *Page 1059 
"for a mile and a half or further," R. 23. The officers did not wear reflectorized traffic safety vests.
When asked what had been his "particular purpose for setting up a roadblock at the intersection of Auburn and Mauldin," Chief Holland replied, "Trying to stop so much trouble in the[Town Creek] [A]partments over there." R. 9 (emphasis added). Chief Holland testified that he and his officers "ma[d]e numerous arrests on individuals . . . at those apartments." Id.
On cross-examination, the following occurred:
 "Q. [By defense counsel:] And this [roadblock] was set up as — for the sole purpose of stopping and observing the automobiles that were going into the Town Creek Apartments?
 "A. Yes, sir, more or less to cut down on trouble over there." R. 16 (emphasis added).
It was not until trial that Chief Holland explained the "trouble" the roadblock was intended to prevent:
 "Q. [By town prosecutor:] Tell me about this roadblock; why you put it there and what y'all were doing.
 "A. We had so much going on at the Town of Town Creek Apartments over there, fighting, drunk and disorderly over there. The town wanted us to tighten up a little bit there and we could catch a lot of it there on the street before it got in there. We could save a lot of the old people misery over there, you know." R. 67 (emphasis added).
"License checks, sobriety checkpoints, and roadblocks are not intrinsically unconstitutional." McInnish v. State,584 So.2d 935, 936 (Ala.Cr.App. 1991). However, it is clear "that a Fourth Amendment 'seizure' occurs when a vehicle is stopped at [such an operation]." Michigan Dep't of State Police v. Sitz,496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990) (sobriety checkpoints). Accord United States v.Martinez-Fuerte, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082,49 L.Ed.2d 1116 (1976) (immigration checkpoints); Garrett v.Goodwin, 569 F. Supp. 106, 116 (E.D.Ark. 1982) ("roadblock conducted for any purpose"). See also Brower v. County of Inyo,489 U.S. 593, 599, 109 S.Ct. 1378, 1383, 103 L.Ed.2d 628 (1989) (use of roadblock to stop driver of stolen car). In order to be constitutionally permissible, the stop must be reasonable.Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 1396,59 L.Ed.2d 660 (1979); Martinez-Fuerte, 428 U.S. at 562,96 S.Ct. at 3085. See also United States v. Sharpe, 470 U.S. 675,682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985) ("[t]he Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures") (emphasis in original).
In Cains v. State, 555 So.2d 290 (Ala.Cr.App. 1989), this Court analyzed the United States Supreme Court's decisions inUnited States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574,45 L.Ed.2d 607 (1975), Martinez-Fuerte, Prouse, and Texas v.Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), and concluded that, under those cases,
 "random stops or spot checks [of vehicles] are unreasonable in the absence of individualized suspicion of wrongdoing; on the other hand, stops [of vehicles] at fixed checkpoints or roadblocks are reasonable if they are carried out pursuant to a neutral and objective plan, are supported by a strong public interest, and are only minimally intrusive to the individual motorist."
Cains, 555 So.2d at 293. We noted that "most courts and commentators have used the . . . three-part test set out inBrown v. Texas" in balancing the public interest advanced by the roadblock and "the degree of intrusion on the individual motorist." Cains, 555 So.2d at 294. That test requires "a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Brown v. Texas, 443 U.S. 47 at 50-51, 99 S.Ct. 2637
at 2640, 61 L.Ed.2d 357 (1979), quoted in Cains, 555 So.2d at 294. Applying this balancing test to the particular roadblock in Cains, a sobriety checkpoint "established on a well-travelled route north of the beach at the end of a spring weekend," 555 So.2d at 298, we determined *Page 1060 
that "the public interest in promoting highway safety by detecting, removing, and prosecuting drunk drivers is extremely great," id. at 294; that this interest was adequately advanced by a checkpoint at "a time and place at which it is likely that drunk drivers would be found," id. at 298; and that these factors outweighed the minimal intrusion to those stopped.[1]
Less than nine months after our decision in Cains, the United States Supreme Court again addressed the question of roadblocks in Michigan Dep't of State Police v. Sitz. At issue in Sitz
were sobriety checkpoints conducted under guidelines established by the Sobriety Checkpoint Advisory Committee appointed by the Director of the Michigan Department of State Police. The Court held that the Brown v. Texas balancing test was the correct method to determine the reasonableness of the checkpoints. 496 U.S. at 450, 110 S.Ct. at 2485. After observing that "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it," 496 U.S. at 451, 110 S.Ct. at 2485, the Court concluded: "[T]he State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped, weighs in favor of the state program." 496 U.S. at 455, 110 S.Ct. at 2488.
It is clear from Sitz and Cains that the particular purpose of or governmental interest to be served by a roadblock is a critical factor in assessing whether the roadblock was reasonable. That particular purpose or interest "must be sufficient to outweigh the invasion of privacy occasioned by the roadblock-style stop." 1 W. Ringel, Searches Seizures,Arrests Confessions § 11.6(c) at 11-45 (2d ed. 1991). "The state's interest in enforcing its registration and licensing laws and the difficulty in enforcing the laws by any other method," "the federal government's interest in enforcement of the immigration laws," id., and the state's interest in eradicating drunk driving, Sitz, 496 U.S. at 451-52,110 S.Ct. at 2485-86; Cains, 555 So.2d at 294, have all been held sufficient to outweigh a minor intrusion upon persons stopped at roadblocks conducted for those purposes.
In the present case, the stated purpose of the roadblock was to prevent "trouble" — "fighting, [public] drunk[enness] and disorderly [conduct]" — at the Town Creek Apartments. While the State clearly has an interest in preventing criminal activity in general, this general interest in law enforcement simply does not outweigh the liberty interests of those seized, however brief the seizure may be. As the District of Columbia Court of Appeals stated when faced with facts similar to those in the present case:
 "The Supreme Court has allowed suspicionless roadblocks in two contexts, both of which involved government interests distinct from general law enforcement. In United States v. Martinez-Fuerte, supra, the Court upheld the constitutionality of permanent immigration checkpoints located near the nation's borders. The Court noted the 'formidable' problem posed by 'the flow of illegal [immigrants] from Mexico,' id, 428 U.S. at 552, 96 S.Ct. at 3080, and upheld the use of checkpoint stops only after concluding 'that maintenance of a traffic-checking program . . . is necessary because the flow of illegal aliens cannot be controlled effectively at the border' using any other mechanism. Id. at 556, 96 S.Ct. at 3082. Most recently, in Sitz, supra, the Supreme Court upheld the constitutionality of sobriety checkpoints, noting the importance of the government's unique interest in combating drunk driving. Sitz supra
[496 U.S. at 451] 110 S.Ct. at 2486. '[n]o one can seriously dispute the magnitude of the drunken driving problem.')
 "The Supreme Court has never upheld, by contrast, a police roadblock designed to promote general law enforcement purposes. Indeed, the Court has indicated that the police must have individual[ized] suspicion before they can seize someone *Page 1061 
for general law enforcement purposes See Delaware v. Prouse, supra, 440 U.S. a 659 n. 18, 99 S.Ct. at 1399 n. 18 (the governmental interest in controlling auto mobile thefts 'is not distinguishable from the general interest in crime control' and is therefore insufficient to justify suspicion less stops). . . . [T]hus, if . . . the police established the . . . roadblock in order to detect evidence of . . . crimes, the roadblock would be unconstitutional. See 3. W LaFave, Search and Seizure: A Treatise on the Fourth Amendment" § 9.5(b), a 551 (2d ed. 1987) ('a general roadblock . . . established on the chance of finding someone who has committed a serious crime would' quite clearly' be unconstitutional (citation omitted)."
Galberth v. United States, 590 A.2d 990, 997-98 (D.C.App. 1991).
In sum, the roadblock in the present case "was addressed to problems of general law enforcement, . . . not to problemsassociated with persons who are stopped at the roadblock. Such a justification is antithetical to the Fourth Amendment."Galberth, 590 A.2d at 998-99 (emphasis added). While the United States Supreme Court stated in Sitz "that the effectiveness prong of the Brown, balancing test was 'not meant to transfer from politically accountable officials to the courts the decision as to which among several reasonable alternative law enforcement techniques should be employed to deal with a serious public danger,' " 1 W. Ringel, § 11.6(c)(1) at 11-48, in this case, as in Galberth, it is abundantly clear that "any law enforcement technique involving a substantial police presence would have had [the desired] effect." 590 A.2d at 999. The goal of preventing "trouble" in the Town Creek Apartments could have been accomplished without intruding on the liberty rights of individual motorists simply by stationing a police officer in the parking lot of the apartments.
Furthermore, the purpose of or the governmental interest to be served by the roadblock must be one that can reasonably be advanced by a roadblock. See Sitz, 496 U.S. at 453-55,110 S.Ct. at 2487-88; Cains, 555 So.2d at 298. The problems sought to be addressed by the roadblock must be "predictably associated with persons who are stopped at the roadblock."Galberth, 590 A.2d at 999. There is no indication in the present case that the roadblock would advance the stated purpose, i.e., that it would prevent "trouble" at the Town Creek Apartments. Clearly, any person driving under the influence of alcohol is violating the law. However, not every person driving under the influence of alcohol necessarily engages in fighting and disorderly conduct once he arrives at his destination. Moreover, it is clear that this roadblock could not possibly have exposed those people who intended to drink intoxicants after arriving at the apartments and who then might have engaged in fighting or disorderly conduct. We also note that the roadblock was initially set up in a totally different area of town and that the roadblock at which the appellant was stopped was positioned so that the officers stopped vehicles other than those going to the apartments.
There are also other factors in this case that weigh against a finding that this particular roadblock was reasonable. In Sitz, the United States Supreme Court appeared to place great emphasis on the fact that the roadblock was conducted under written "guidelines setting forth procedures governing checkpoint operations, site selection, and publicity" that left virtually no discretion to the officer in the field.496 U.S. at 447, 110 S.Ct. at 2484. Sitz, of course, supersedes this Court's intimation in Cains that a written policy is not a prominent factor in determining whether a particular roadblock was reasonable. 555 So.2d at 297. In the present case, there was no written policy concerning any aspect of the roadblock, Although Chief Holland stated that he had informed the mayor and city council that he intended to conduct two "license check[s]" or "roadblock[s]" in the town, there is no indication that the mayor and city council were informed of the location of the roadblocks or of the manner in which they would be conducted. Although Holland and Hagwood testified that every car was stopped and that all drivers were treated the same, it is clear that the discretion of the officers as to the location of the roadblocks was completely unfettered. When there was "no traffic" at the first site, the officers simply moved to another. *Page 1062 
See State v. Fedak, 9 Haw. App. 98, 825 P.2d 1068, 1071-72
(1992) (sobriety roadblock held unconstitutional where officer in field arbitrarily and without authority changed location of roadblock). Under the particular facts of this case, we do not think that it makes a difference that one of the officers in the field was actually the police chief.
We also note that there were extremely few safety precautions taken at this roadblock. Although the roadblock was conducted late at night, the officers had only the parking lights on on their vehicles and were using only "mag" flashlights to direct the stops. As in State v. Canton,775 S.W.2d 352, 354 (Mo.App. 1989), "[n]o signs, flares or other warning was given that a roadblock existed, the purpose of such a roadblock or that vehicles were expected to stop. . . . [T]he officers wore no reflective clothing. A driver approaching the scene would have no idea what was occurring, what his response should be, or why he was being stopped." The safety measures used at a roadblock are not "pivotal to its constitutionality."Cains, 555 So.2d at 296. However, in view of the other circumstances weighing against a finding that this roadblock was reasonable, the lack of safety measures must be considered as yet another negative factor.
"Because [a] roadblock is a warrantless seizure, and as such is presumed to be invalid, the [prosecution] has the burden of proving its overall reasonableness and validity."State v. Mazurek, 237 N.J. Super. 231, 567 A.2d 277, 279
(App.Div. 1989), cert. denied, 121 N.J. 623, 583 A.2d 320
(1990). Accord Garcia v. State, 853 S.W.2d 157, 159 (Tex.App. 1993). See also State v. Fedak, 825 P.2d at 1070; State v.Canton, 775 S.W.2d 352, 353 (Mo.App. 1989). Cf. McLemore v.State, 562 So.2d 639, 643 (Ala.Cr.App. 1989) (noting that an argument could be made "that the State did not carry its burden of proving the reasonableness of a warrantless arrest"). The prosecution failed to meet its burden in this case and the appellant's motion to suppress should have been granted.
 II
The appellant asks this Court to declare that all roadblocks violate Art. I, § 5 of the Alabama Constitution. This we decline to do, having held in Brunson v. State,580 So.2d 62, 64 (Ala.Cr.App. 1991), that a roadblock established and operated in accordance with an " 'objective and neutral plan' " is "not violative of the Alabama Constitution." We continue to adhere to this holding, although we note that, as discussed in Part I of this opinion, under Cains and Sitz, the purpose of and governmental interest served by a roadblock and the degree to which the roadblock advances that purpose or interest must outweigh the intrusion to stopped motorists in order for the roadblock to pass constitutional muster.
We are cognizant of the fact that at least two state courts have held, after the United States Supreme Court's decision in Sitz, that roadblocks violate their state constitutions.Sitz v. Department of State Police, 193 Mich. App. 690,485 N.W.2d 135 (1992),[2] leave to appeal granted, 441 Mich. 869,494 N.W.2d 745 (1992) (table); State v. Sims, 808 P.2d 141, 149
(Utah App. 1991), cert. granted, 853 P.2d 897 (Utah 1993) (table). We noted in Cains that there were a number of cases holding that roadblocks were unconstitutional and that this area of the law has been called "an 'amorphous area.' " 555 So.2d at 293-94. We then concluded " 'that a DWI roadblock is constitutional if properly conducted.' " Id. (emphasis added).
Our decision in Cains was validated by the United States Supreme Court's decision in Sitz. In view of that fact and the fact that the language of Art. 1, § 5, of the Alabama Constitution[3] is substantially similar to the *Page 1063 
language of the Fourth Amendment,[4] we are not disposed to recede from our holdings in Cains and Brunson.
For the reasons stated in Part I of this opinion, the appellant's conviction is reversed and this cause is remanded to the circuit court.
REVERSED AND REMANDED.
All Judges concur.
[1] In operating the checkpoint, law enforcement officers stopped every vehicle in both lanes of traffic and asked the driver for his or her license. If there were no problems, the vehicle was waved on. "The duration of each stop was for 'five, ten seconds or so, just long enough to pull out their license.' " Cains, 555 So.2d at 291.
[2] Prior to review by the United States Supreme Court, the Michigan Court of Appeals held that the sobriety checkpoints violated the Fourth Amendment. Sitz v. Department of StatePolice, 170 Mich. App. 433, 429 N.W.2d 180 (1988). When that decision was overturned by the United States Supreme Court inMichigan Dep't of State Police v. Sitz, 496 U.S. 444,110 S.Ct. 2481, the Michigan Court of Appeals held that the checkpoints violated the Michigan state constitution. Sitz v. Department ofState Police, 485 N.W.2d 135.
[3] Article I, § 5, of the Alabama Constitution provides: "That the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizure or searches, and that no warrants shall issue to search any place or to seize any person or thing without probable cause, supported by oath or affirmation."
[4] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."