TAYLOR, Presiding Judge,
dissenting.
I dissent from Part I of the majority’s unpublished memorandum. The majority seems to say that the extent of cross-examination is to be determined by the trial judge and that the judge’s decision will not be disturbed absent a showing of abuse. The majority further states that if the court did err in this ease, the error was harmless. I do not consider that evidentiary matters have deteriorated into a matter of the court’s discretion.
The scope of cross-examination is not a matter within the sound discretion of the trial judge, as some cases may seem to say; it is controlled by law. C. Gamble, McEl-roy’s Alabama Evidence, § 136.01 (4th ed.1991). See Scott v. City of Guntersville, 612 So.2d 1273 (Ala.Cr.App.1992); Hammock v. State, 612 So.2d 545 (Ala.Cr.App.1992).
Section 12-21-137, Code of Alabama 1975, states in pertinent part:
“The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him.”
See also Ala. Const. 1901, Article I, § 6.
“... [T]he cross-examining party has the absolute right on cross-examination, not only to inquire as to matters relevant to the issues ... but also to inquire into the conduct and circumstances of the witness which have measurable bearing upon his credibility. This right to a party to have thorough and sifting cross-examination is provided by statute.”
C. Gamble, McElroy’s Alabama Evidence § 136.01 (4th ed.1991). (Emphasis added.)
The following occurred during the questioning of state’s witness Jo Hanson, a social worker with the crisis intervention unit of *1232 the Department of Human Resources, who had interviewed the two victims before trial:
“Q [By Mr. Berry, defense counsel]: How many meetings did you have with these children?
“A: I did not interview them again because I recommended they continue in treatment, in counseling. I did not feel it necessary for them to have another interview since they were in treatment.
“Q: Okay. The opinion that they were credible is based on a 30-minute interview with each child?
“A: And based on information from their mother and also on the reports.
“Q: Okay. So when we talk about credibility, that is a big factor as far as Mr. Niezer [prosecutor] asked you, did they seem to keep the same story, and on with that to try to set this up, credibility — let me ask you your expert opinion. I’ll say a hypothesis. If a person had two different statements that were given by two alleged victims and then had another statement which was given from the stand, and there were discrepancies in all three reports, what would that do to their credibility in your opinion as an expert?
“Mr. Niezer: Object to that, Your Hon- or, unless they vary in a material way.
“The Court: Sustained.
“Q (By Mr. Berry): Okay. Let me ask you this: From the reports, if I say that it went from a statement of one of the alleged victims where he stated that he was forced to give oral sex to his father and to play with him, but then when it came to court, the material variance was such that his father also gave him oral sex, that’s quite a material variance to you?
“A: Are you saying that the witness was saying still that he was forced to give oral sex to the father, but then he added also?
“Q: Added, a material variance, is that a material variance to you?
“A: To me that is giving additional details that someone might not have wanted to disclose earlier. It’s not recanting or contradicting what was said.
“Q: After three or four separate interviews and then coming out, that sounds like a change of story. Do you—
“The Court: I’m going to cut you off now. If you want to cross-examine this witness, Mr. Berry, you know how. You don’t stand there and argue with her and make an argument for the jury before them with this witness. If you’ve got anything else, ask her. If not, quit. “Mr. Berry: Yes, sir, I’ve got a lot, Your Honor.
“The Court: Get on to it or I’ll stop you.
[[Image here]]
“Q: [defense counsel]: How long have you worked with Ms. Owens [an intake worker with the Department of Human Resources who took the initial report from the victims’ mother and who subsequently assigned the case to Jo Hanson]?
“A: Twenty years.
“Q: And out of the 20 years, do you know her reputation for truth and veracity?
“Mr. Neizer: Judge, I object to that.
“The Court: I sustain. Come down.
“Mr. Berry: I’m not through, Your Hon- or.
“The Court: You are finished right now, Mr. Berry.
“Mr. Berry: I’m objecting for the record. I’m not through with the witness.
“The Court: I don’t care what you’re doing. You’re fooling around here playing a game of evidence.
“Mr. Berry: I’m not through, Your Hon- or.
“The Court: I don’t appreciate it and I won’t have it.
“Mr. Berry: I object.
“The Court: I told you before, the fourth time I told you in this trial, now you’re not going to examine another witness if you do it again. You got that, Mr. Berry? I’ll go anywhere and testify to it. You understand? Where do you think you are? We’ve got evidence. You don’t ignore it in my courtroom. I don’t appreciate it a bit. Take a five minute break. Don’t you forget, Mr.
*1233 Berry. If you do this again, you get no further examination.
“Tall have to forgive me now, but you get my attention if you keep on and on and on.
“(Recess.)
“The Court: You do that again and I’ll hold you in contempt. You got it, Mr. Berry?
“Mr. Berry: Yes, sir.
“The Court: Whatever I have to do I’ll do it. Hear, Mr. Berry?
“Mr. Berry: Yes, sir.
“The Court: Don’t you forget that.
“Mr. Berry: I understand that, Your Honor. Trying to do my job.
“The Court: No, you’re not. You’re trying to fool with me.
“Mr. Berry: No, sir.
“The Court: I’ll put you in jail if that happens another time, you got that, on contempt of court.
“Mr. Berry: I understand that.”
It is clear from the dialogue above that the court limited defense counsel’s cross-examination of Ms. Hanson.
I do not believe that the error here was harmless as the majority concludes, given the circumstances surrounding the case. As the majority states, Ms. Hanson’s testimony dealt directly with the reliability and credibility of the victim’s testimony. Given the fact that one victim recanted his trial testimony, certainly the error was not harmless.
The appellant’s constitutional right as guaranteed by the Sixth Amendment to confront his accusers was violated.
A further separate ground for reversal is present in this case, but I refrain from addressing it because it is unlikely to recur upon a retrial.